UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN C. SANCHEZ,                    )<br>                                                    )<br>            Plaintiff,                         )<br>                                                    )<br>     v.                                          )<br>                                                    )<br>CAROL MICI, et al.,                   )<br>                                                    )<br>            Defendants.                   )<br>                                                    ) | Civil Action No.<br>21-10021-FDS |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, C.J.**

This action arises out of an alleged strip search of a prisoner by correctional officers at Souza-Baranowksi Correctional Center. Following an altercation at the prison, plaintiff Juan Sanchez was subjected to a strip search during which the correctional officers involved allegedly behaved in a crude and unprofessional manner. The complaint asserts a claim under 42 U.S.C. § 1983, alleging that the search violated the Eighth Amendment, and a claim alleging violations of the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq.*

Defendants Carol Mici, Steven Kenneway, John Does #1-4, and Jane Doe (collectively, the "defendants") have jointly moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

For the following reasons, the motion will be granted.

**I.      Factual and Procedural Background**

     **A.      Factual Background**

Unless otherwise noted, the following facts are drawn from the complaint.

Juan Sanchez is an inmate who was incarcerated at Souza Baranowski Correctional Center ("SBCC") at the relevant times in the complaint.

At the relevant time, Carol Mici was the commissioner of the Massachusetts Department of Correction, and Steven Kenneway was the superintendent of SBCC. (*Id*. ¶¶ 8, 10).

John Does #1-4 and Jane Doe (collectively the "Doe defendants") were correctional officers assigned to SBCC. (*Id*. ¶¶ 12, 14). They were allegedly not wearing name tags at the time described in the complaint. (*Id.* ¶ 15).

On January 10, 2020, a fight broke out between several inmates and officers in the N-1 Block at SBCC. (*Id*. ¶ 18). Following the altercation, Mici and Kenneway imposed a prison lockdown on the entire facility. (*Id*.). While on lockdown, inmates were allegedly denied telephone calls and attorney visits. (*Id.* ¶ 19). They were also not permitted to clean their cells or shower for two weeks. (*Id*).

On January 22, during the lockdown, the tactical team, which included the Doe defendants, allegedly assaulted and stripped inmates and seized their property. (*Id*. ¶ 20). According to the complaint, those actions were taken at the direction of Mici and Kenneway. (*Id.*).

According to the complaint, at approximately 8:15 a.m. on January 23, the tactical team arrived at the H-2 block, where Sanchez was held, and began escorting inmates out of their cells at gunpoint. (*Id*. ¶ 21). The Doe defendants arrived at Sanchez's cell, asked for him, and subjected him to a full strip search. (*Id*. ¶¶ 22, 25). According to the complaint, Sanchez "felt embarrassed and very uncomfortable stripping in front of defendant, Jane Doe," but was too afraid to protest. (*Id*. ¶ 25). Sanchez complied with the Doe defendants' directive to disrobe, squat, cough, spread his buttocks, lift his genitals, and perform other strip-search procedures.

(*Id.* ¶ 26). The complaint alleges that Jane Doe said, "Are you serious[?]" and "wow," while looking at Sanchez's genitals, prompting John Does #1-4 to laugh and smile at Sanchez. (*Id.* ¶ 27). As a result, Sanchez was "completely humiliated and shamed." (*Id.* ¶ 28).

On February 5, 2020, Sanchez filed a grievance concerning the strip search, which was denied on May 6. (*Id.* ¶¶ 29-30). Sanchez appealed the denial, which was also denied. (*Id.* ¶ 31).

### B.   Procedural Background

On January 6, 2021, Sanchez filed a *pro se* complaint against defendants in their official and personal capacities.

The complaint alleges, in essence, two causes of action. The first asserts a claim under 42 U.S.C. § 1983, alleging that the strip search violated the Eighth Amendment's prohibition against cruel and unusual punishment. The second alleges a violation of the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq*.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II.   Legal Standard

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally*

*Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

When, as here, a motion to dismiss is filed against a *pro se* litigant, any document filed by the *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  However, while *pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*, 116 F.3d 464, at *1 (1st Cir. June 23, 1997) (per curiam)).

### III.   Analysis

Defendants have moved to dismiss the complaint on the grounds that (1) it fails to identify the Doe defendants; (2) it fails to allege a plausible violation of the Eighth Amendment; (3) the Prison Rape Elimination Act (PREA) does not apply to strip searches of prisoners; and (4) the complaint fails to establish supervisory liability for defendants Mici and Kenneway.

#### A.   Failure to Identify Doe Defendants

Defendants first contend that the complaint fails to identify the unnamed defendants and that plaintiff failed to conduct a good-faith investigation to ascertain their identities.  Defendants

4

argue that this lack of good faith is made evident by (1) the complaint's lack of a physical description for several of the Doe defendants and (2) the length of time (18 months) between the alleged incident and the filing of the complaint, which, according to defendants, afforded him ample opportunity to ascertain the identities of the officers.

Although bringing a complaint against unnamed defendants is not favored, "a plaintiff may bring a suit against a fictitious or unnamed party where a good faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information." *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007).

The Court cannot conclude, on the present record, that plaintiff failed to conduct a good-faith investigation. He is, of course, a prisoner, and not at liberty to be able to perform an investigation in any depth. The complaint alleges that the officers were not wearing name tags and that they instructed plaintiff to turn around and walk backward toward them. The complaint describes the perceived gender of each officer, a physical description of one of them, and recounts the time and date that the team conducted the search. Under the circumstances, there is a plausible basis to believe that plaintiff cannot identify the officers, despite a good-faith investigation, and that there is a reasonable likelihood that discovery would reveal their identities.

B.   **42 U.S.C. § 1983—Eighth Amendment**

Defendants next contend that the complaint fails to allege a plausible Eighth Amendment violation because the strip search did not result in the infliction of physical pain and was directly related to a penological purpose—specifically, the need to restore order in the prison following inmate assaults on correctional officers.

"A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured

by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (2008).  Proof of the second element requires a plaintiff to show that defendant caused the alleged deprivation. *Id.*

At this stage of the case, it is not contested that defendants acted under the color of state law.  Therefore, the relevant question is whether they deprived plaintiff of a federal right.

The Eighth Amendment prohibits the imposition of "cruel and unusual punishment." U.S. Const. amend. VIII.  It protects prisoners from the "'unnecessary and wanton infliction of pain,' which is 'repugnant to the conscience of mankind.'" *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  The unnecessary and wanton infliction of pain is that which is "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). "[T]he Amendment proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 102.  It forbids the treatment of prisoners that is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id.* (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  However, the alleged injury or deprivation to which the prisoner is subjected must be "sufficiently serious" to state a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Here, the alleged actions by correctional officers, even assuming that they occurred, may have been demeaning and unprofessional, but do not rise to the level of an Eighth Amendment violation.

To begin, a strip search conducted for penological purposes does not violate the Eighth Amendment.  *See Arruda v. Fair*, 710 F.2d 886, 888 (1st Cir. 1983) (holding that regular strip searching of inmates based on prison security procedures did not violate Fourth or Eighth

Amendments). Only body searches that are "maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Graham v. Warden*, 2008 WL 2699671, at * 4 (D.N.H. June 30, 2008) (internal quotation marks omitted) (quoting *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987)). "In other words, the search must amount to 'calculated harassment unrelated to prison needs.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)).

Although the complaint characterizes the strip searches as "retaliatory," it alleges no facts that the searches were conducted for an impermissible purpose. Rather, the complaint states that the prison lockdown and resulting strip searches were implemented following a fight between inmates and correctional officers. (*Id.* ¶ 18). It is well-established that "maintaining safety and order at [correctional facilities] requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Florence v. Board of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012); *see also Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). Nothing in the complaint suggests that the searches were conducted in retaliation for anything plaintiff had done; it simply alleges that numerous prisoners, including plaintiff, were searched in the aftermath of the fight.

A strip search can violate the Eighth Amendment when it is conducted "in a harassing manner intended to humiliate and cause psychological pain." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)). That said, "[a]cts of verbal harassment, however, reprehensible, unprofessional, or inappropriate, do not

7

violate the federal constitution." *Levesque v. New Hampshire*, 2010 WL 2367346, at *35 (D.N.H. May 12, 2010), *report and recommendation adopted*, 2010 WL 2794072 (D.N.H. July 13, 2010); *see also Watison v. Carter*, 668 F.3d 1108, 1112-13 (9th Cir. 2012) (affirming dismissal of Eighth Amendment claim alleging prison guard rubbed his thigh against inmate's thigh, smiled in sexually suggestive manner, and laughed while inmate was seated on toilet); *Solomon v. Michigan Dep't of Corr.*, 478 F. App'x 318, 320 (6th Cir. 2012) (stating that isolated incidents of groping of a prisoner's genitals, even while making sexually suggestive comments, did not constitute an Eighth Amendment violation); *Jane Doe 5 v. City of Haltom City*, 106 F. App'x 906, 908 (5th Cir. 2004) ("Verbal sexual harassment does not violate a detainee or inmate's constitutional rights . . . ."); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("[I]solated episodes of harassment and touching . . . do not involve a harm of federal constitutional proportions as defined by the Supreme Court.").

      Cases where the complaint has stated a plausible Eighth Amendment violation arising out of a strip search have alleged conduct far more egregious than that alleged here. For example, in *King v. McCarty*, the Seventh Circuit held that the complaint stated a viable claim where guards allegedly transported the prisoner throughout the prison in a transparent jumpsuit, exposing him to view by guards of both sexes and other inmates. 781 F.3d at 898. As part of its analysis, that court considered that the plaintiff had already been strip-searched and other inmates arriving to the prison were not similarly exposed, undermining any contention that keeping prisoners in a state of "prolonged nudity" served a valid security purpose. *Id.* In addition, the guards mocked the plaintiff when he objected to wearing the jumpsuit, suggesting that the intent of the policy was to humiliate or embarrass. *Id.* In short, the complaint alleged a prison policy of "compelled, continuing, and public undress without any obvious justification for the treatment." *Id.*

Likewise, the search at issue in *Morales v. Foster* was allegedly conducted with the intent to harass and humiliate. 2019 WL 441967, at * 2 (D.N.H. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 440564 (D.N.H. Feb. 1, 2019). There, the plaintiff objected to a strip search; the guard then threatened to issue the plaintiff a disciplinary ticket and told him that the more he protested the search, the longer it would take. *Id.* The prisoner was then subjected to an "excessively long, slow and humiliating search." *Id.* (internal quotation marks omitted). *See also Graham*, 2008 WL 2699671, at *5 (holding that complaint stated plausible Eighth Amendment claim when alleging that public strip search conducted in view of other inmates and female correctional officers was in retaliation for filing of administrative grievance).

Here, the complaint alleges that plaintiff was searched in his own cell in view of the guards and his cellmate. It does not plausibly allege that plaintiff was subjected to prolonged nudity, that the search differed from normal procedures at the prison, or that it was obviated by other security procedures. Nor does it plausibly allege that the guards commenced the search with the intent to humiliate plaintiff.

The complaint does allege that one of guards was female and that she made a remark about plaintiff's genitals, causing the other guards to laugh. If true, such conduct is unquestionably inappropriate and demeaning. Nonetheless, without more, it is insufficient to support a claim under the Constitution for violation of the Eighth Amendment. *See Reynolds v. Coyne-Fague*, 2021 WL 4898175, at * 2 (D.R.I. Oct. 20, 2021) (recommending dismissal of Eighth Amendment claim where plaintiff alleged that before a court appearance, guards strip searched him publicly and mocked his genitals, resulting in ridicule from guards and prisoners for months thereafter).

Finally, and in any event, to the extent that the complaint asserts claims against Mici and

Kenneway, it fails to state a claim for supervisor liability. Supervisors may only be liable under § 1983 "when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation." *Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir. 1987) (quoting *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). That applies only to situations where a supervisor "formulates a policy or engages in a practice that leads to a civil rights violation committed by another," and where he or she has notice of the conditions likely to lead to a deprivation of constitutional rights. *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998).

Here, Mici and Kenneway are not alleged to have personally engaged in the demeaning strip search. And the complaint does not plausibly allege the existence of a policy or practice at the prison of conducting unduly demeaning or inappropriate strip searches, or that they were on notice of any condition likely to lead to a deprivation of constitutional rights.

Accordingly, the motion to dismiss will be granted as to the § 1983 claim.

### C.     Prison Rape Elimination Act

The complaint alleges that defendants failed to comply with the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq*. Defendants contend that PREA does not apply to strip searches conducted by prison officials.

Whether that is true or not, the claim fails as there is no private right of action under the PREA, nor does it afford prisoners rights that can be asserted under § 1983. *Conley v. Bardon*, 2021 WL 3550799, at * 4 (D. Mass. Aug. 11, 2021); *see also Chao v. Ballista*, 772 F. Supp. 2d 337, 340 n.2 (D. Mass. 2011); *Chinnici v. Edwards*, 2008 WL 3851294, at * 3 (D. Vt. Aug. 12, 2008).

Accordingly, the motion to dismiss will be granted insofar as the complaint attempts to state a claim pursuant to the PREA.

## IV.     Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**So Ordered.**

Dated:  March 7, 2022

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Chief Judge, United States District Court